IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Elvena Devone Nelson, ) | |
| ) | |
| Plaintiff, ) | C/A No. 9:19-3460-MBS |
| ) | |
| v. ) | |
| ) | **OPINION AND ORDER** |
| Andrew M. Saul, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

On December 12, 2019, Plaintiff Elvena Devone Nelson filed the within action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of Defendant Commissioner of Social Security (the "Commissioner") denying her claim for disability insurance benefits and supplemental security income.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

On May 8, 2015, Plaintiff protectively filed an application for a period of disability and disability insurance benefits. The same day, Plaintiff also protectively filed an application for supplemental security income. In both applications, Plaintiff alleged disability beginning on September 30, 2014. R. 19. Plaintiff's claims were denied both initially and upon reconsideration.

A hearing was held before an Administrative Law Judge ("ALJ") on May 8, 2015. Plaintiff testified that she was fifty-four years old and had earned an associate's degree as a medical administrative assistant. R. 39. Plaintiff testified that she constantly is in excruciating pain in her back down to the bottom of her legs, especially on the left side. Id. She also testified that she has fibromyalgia on the left side, in the hip area. Id. In addition, Plaintiff was diagnosed with post-traumatic stress disorder (PTSD), which causes her nightmares, anxiety, depression, disassociation,

insomnia, and an inability to be around others. R. 40. Plaintiff testified that she was not able to do housework, including cooking, cleaning, and laundry. Plaintiff does not do any grocery shopping. Id. Plaintiff testified that she wakes up in the night and gets up early. During the day she cannot stand up long. She has to hold onto things because her legs give out. She will watch television but cannot sit through an entire program. Plaintiff has had surgery, but it did not help. R. 41. Plaintiff also has had injections, but they provide relief only for three or four days, a week at the most. R. 42.

      Plaintiff testified that she can only stand and walk about twenty minutes, and then she starts getting a lot of pain down her leg. R. 43. She can sit about twenty minutes, but has to twist and turn and push up to keep pressure off her spine. She sits in a Pilate chair. Plaintiff testified that her hands are nervous and sometimes the left side goes numb. According to Plaintiff, her blood pressure level is constantly elevated because of the pain. Plaintiff testified that she has degenerative disc disease that causes her back pain and peripheral neuropathy in her feet. R. 44-45. Plaintiff also testified that she has a torn meniscus in her left knee, but must get relief for her back before the torn meniscus is treated. R. 45. Plaintiff testified that she is incontinent and that she takes a long list of medications. According to Plaintiff, the medications make her constantly nauseated and sometimes depressed. She has brain fog and is constantly frustrated. R. 46. Plaintiff testified that she can drive if she needs to. R. 49.

      The ALJ issued his opinion on September 26, 2018. The ALJ determined that Plaintiff suffered from severe impairments of anxiety, depression, obesity, and degenerative disc disease status post-surgical intervention. R. 21. The ALJ found that these medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28. The ALJ concluded that Plaintiff's fibromyalgia is non-severe with an unclear diagnosis for the

condition. The ALJ determined that Plaintiff's care showed intermittent improvement using medications. R. 22.

The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 55. The ALJ noted a moderate limitation in Plaintiff's ability to understand, remember, or apply information. The ALJ stated that a consultative examination found that Plaintiff remained logical, oriented, and with reduced recall, and support for a diagnosis of mental health issues likely to improve with care. R. 22-23. The ALJ determined that Plaintiff has a moderate limitation in interacting with others. According to the ALJ, Plaintiff received very limited mental health intervention and presented capable of communicating with normal mood and appropriate affect, even after having discontinued medications. The ALJ noted that Plaintiff presented at times anxious and sought some medication interference. R. 23.

The ALJ next determined that Plaintiff has a mild limitation with respect to concentrating, persisting, or maintaining pace. The ALJ found Plaintiff to have presented oriented and logical, capable of performing during a consultative examination. The ALJ determined that Plaintiff received medication management with notes indicating she remained cognitively intact. The ALJ then stated that Plaintiff has no greater than a moderate interference given examination findings and the degree of care.[1] The ALJ also determined that Plaintiff has a mild limitation for adapting or managing herself. The ALJ found that Plaintiff managed to obtain medical care, demonstrated retained functioning to report ongoing issues in an effort to benefit. R. 23.

The ALJ concluded that Plaintiff has the residual functional capacity to perform light work

---

[1] It is not clear whether the ALJ determined Plaintiff has a mild or moderate limitation, as the ALJ refers to both in his decision. R, 24, third paragraph.

3

as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except she is limited to understanding, remembering, and carrying out simple instructions; and no frequent public interaction. The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 24. The ALJ noted that Plaintiff is unable to perform any past relevant work as a cosmetologist, and that, at fifty years old, she was an individual closely approaching advanced age on the alleged disability onset date. The ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. 28. Accordingly, the ALJ concluded that Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act, or under section 1614(a)(3)(A) of the Social Security Act. R. 29.

Plaintiff appealed the ALJ's decision to the Appeals Council. The Appeals Council issued a decision on October 18, 2019, in which it observed that the ALJ's finding regarding Plaintiff's RFC would have resulted in a finding of disabled at age 55, less than a month after the ALJ issued his decision. Accordingly, the Appeals Council determined that Plaintiff was entitled to a period of disability beginning on September 26, 2018, the date of the ALJ's decision, and to disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act. The Appeals Counsel's partially favorable decision became the final administrative action of the Commissioner. Plaintiff's request for judicial review followed.

Plaintiff raises the following issues:

> I. THE ALJ'S STEP TWO FINDINGS ARE NOT SUPPORTED BY SUBSTANTIAL EVIDENCE; AND
>
> II. THE ALJ'S RFC ASSESSMENT IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE; AND
>
> III. THE ALJ DID NOT ASSESS THE COMBINED EFFECT OF MS. NELSON'S MULTIPLE IMPAIRMENTS; AND
>
> IV. THE ALJ FAILED TO CARRY HIS BURDEN AT STEP FIVE OF THE SEQUENTIAL EVALUATION PROCESS.

ECF No. 12.

First, Plaintiff asserts that the ALJ failed to take into account Plaintiff's left knee impairment or her cervical spine problems. According to Plaintiff, the ALJ's reference to degenerative disc disease refers to issues she had with her lumbar spine. Referring to the medical records, Plaintiff notes that on February 8, 2017, she complained to Dr. Lominchar of left knee pain with difficulty walking. R. 892-95. Plaintiff presented to Charleston Bone and Joint on February 20, 2017. R. 926-27. On exam, she had tenderness along the medial joint line with some pain with McMurray testing. Plaintiff's reflexes were hypoactive, but equal. Plaintiff's x-ray revealed some medial compartment spurring and mild narrowing of the medial side consistent with medial compartmental arthritis. Plaintiff reported some improvement after receiving an injection. Plaintiff also was assessed with a tear of the medial meniscus that could require surgery. R. 927.

Plaintiff presented to Neurosurgery and Spine Specialists on April 15, 2016 with complaints of lower back, neck, and upper back pain following a car accident. R. 639-40. It was noted that Plaintiff had swelling in the juncture of the right side of the neck in the trapezius muscle which appeared to be soft tissue/trigger point related. An MRI about a month later showed disc protrusions at C4-5, C5-6, and C6-7, which caused mild cord deformity. At a follow-up, it was noted that her condition did not require surgery, but that she did need a rheumatologist and pain management. R

636-37. Plaintiff argues that the ALJ's failure to rate these impairments or even mention them in his decision constitutes error.

Second, Plaintiff contends the ALJ failed to consider whether Plaintiff can perform the assigned residual functional capacity of "light" work activities on a regular and continuing basis–that is, during a regular work week– as required by 20 C.F.R. § 404.1545. Plaintiff contends that the functions of continuous lifting, standing, and walking are at issue, along with Plaintiff's knee impairment, which was not mentioned by the ALJ. Plaintiff argues that, although the ALJ purported to rely on the opinions of the state agency's chart reviewers in reaching his conclusions, the ALJ did not address the extensive postural limitations set out in the opinions.[2] Plaintiff further asserts that the chart reviewers based their opinions on less than the full record.

Regarding her complaints of pain, Plaintiff contends that the ALJ failed to consider the entire record as required by SSR 16-3p. SSR 16-3p provides that, in addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ should take into account the following factors:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

---

[2]In September 2015, state agency physician Mary Lang, M.D. opined that Plaintiff could perform light work. R. 89-90. In July 2016, state agency physician Bonnie Lammers, M.D. opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand and walk for six hours in an eight-hour day; sit for six hours in an eight-hour day; occasionally perform postural maneuvers (climbing, stooping, kneeling, crouching, and crawling) except was unlimited in balancing and had to avoid even moderate exposure to hazards. R. 95-96.

> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

According to Plaintiff, the ALJ relied on examinations where Plaintiff presented with intact gait, no neurological deficits, and intact strength. Plaintiff argues the ALJ merely acknowledged the records showing Plaintiff presented with tenderness, sometimes positive straight leg raising, occasional numbness in the right leg, and limited range of motion, but failed to explain why these findings were entitled to less weight that the normal findings on which he relied. Plaintiff further contends that the ALJ did not take into account any of the criteria set forth in SSR 16-3p.

Third, Plaintiff argues that the ALJ did not expressly consider the combined effect of all her impairments, as required by 20 C.F.R. § 404.1545(a)(2). Plaintiff states that the ALJ did not mention several impairments and never mentioned those he determined were not severe, such that his decision cannot demonstrate consideration of the combined effect of Plaintiff's impairments. Plaintiff further states that the ALJ offered only a limited summary of her mental health issues and made no particularized findings regarding Plaintiff's physical and mental impairments as well as the side effects of her necessary medications.

Finally, Plaintiff asserts that the ALJ erred in finding that Plaintiff has non-exertional limitations that limited her to unskilled work and no frequent public interaction without considering that the non-exertional limitations significantly eroded the occupational base. Plaintiff contends that the ALJ should be instructed to include the testimony of a vocational expert in further proceedings.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02 (D.S.C.), this matter was

referred to United States Magistrate Judge Molly H. Cherry. On January 27, 2021, the Magistrate Judge issued a Report and Recommendation in which she thoroughly recounted Plaintiff's medical records. The Magistrate Judge agreed with Plaintiff that the ALJ had erred by failing to assess Plaintiff's work-related abilities–particularly those pertaining to lifting, standing, and walking–on a function-by-function basis. The Magistrate Judge found that the ALJ's residual functional capacity was based entirely on SSR 16-3p. The Magistrate Judge determined that the ALJ failed to follow the proper order of residual functional capacity analysis: evidence, logical explanation, and conclusion. ECF No. 15, 17 (citing Thomas v. Berryhill, 915 F.3d 307, 311 (4th Cir. 2019)). According to the Magistrate Judge, the ALJ commenced with the conclusion and then found that the limitations caused by Plaintiff's impairments were consistent with the her residual functional capacity. The Magistrate Judge also determined that the ALJ did not properly assess the extent to which Plaintiff's alleged physical impairments impacted her ability to work. The Magistrate Judge observed that Plaintiff's testimony, adult function reports, and medical records show Plaintiff's chronic pain affected her ability to sit, stand, walk, and perform daily activities, and that her pain was increased by bending and rotation. The Magistrate Judge determined that the ALJ should have analyzed and provided a narrative discussion describing how Plaintiff's alleged limitations in performing each of these functions affected her ability to perform job-related tasks for a full workday. The Magistrate Judge stated that the ALJ's analysis of Plaintiff's residual functional capacity contains too little logical explanation to enable the court to conduct meaningful review.

On this ground, the Magistrate Judge recommended remand to the Commissioner for further proceedings. The Magistrate Judge did not address Plaintiff's other allegations of error, observing that the ALJ could reconsider and re-evaluate the evidence in toto as part of the reconsideration. The Commissioner filed objections to the Report and Recommendation on February 10, 2021, to

which Plaintiff filed a reply on February 18, 2021.

This matter is now before the court for review of the Magistrate Judge's Report and Recommendation. The court is charged with making a de novo determination of any portions of the Report to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28. U.S.C. § 636(b).

## II.  STANDARD OF REVIEW

A court should review de novo only those portions of a Magistrate Judge's Report to which specific objections are filed and review those portions to which only "general and conclusory" objections have been made – for clear error. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983); Opriano v. Johnson, 687 F.2d 44, 77 (4th Cir. 1982).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 4059(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. Vitek v. Finch, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than uncritical rubber stamping of the

9

administrative action." Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that [her] conclusion is rational." Vitek, 438 F.2d at 1157-58.

The Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). However, the Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. Richardson v. Perales, 402 U.S. 389, 401 (1971).

### III.  APPLICABLE LAW

An individual is eligible for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, if he or she is insured, has not attained retirement age, has filed an application for disability insurance benefits, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). Under Title XVI of the Act, 42 U.S.C. §§ 1381-3(f), benefits are available to an individual who is financially eligible, files an application, and is disabled as defined in the Act. 42 U.S.C. § 1382. An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least twelve consecutive months. See Barnhart v. Walton, 535 U.S. 212, 214-15 (2002). Additionally, for disability insurance benefits, the claimant must prove he was disabled prior to his date last insured. Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012) (citing 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. §§ 404.101(a), 404.131(a)).

The Commissioner has developed the following five-step evaluation process for determining whether a claimant is disabled under the Act: (1) whether the claimant engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable impairment; (3) whether the impairment meets or equals the severity of an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(v). Through the fourth step, the burden of production and proof is on the claimant. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983). At step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. Id. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

## IV. DISCUSSION

The Commissioner objects to the Report and Recommendation on the grounds that none of the purported errors identified warrant remand. The court disagrees.

The Commissioner first asserts that the Magistrate Judge erred in finding the ALJ did not cite the relevant regulations. According to the Commissioner, both the ALJ and the Appeals Council cited to the relevant regulations and assessed Plaintiff's residual functional capacity under their broad auspices. In the court's view, the Commissioner understates the Magistrate Judge's analysis. The Magistrate Judge noted that the Commissioner cited to SSR 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims. A correct analysis of Plaintiff's residual functional capacity would follow the strictures of SSR 96-8p, Policy Interpretation Ruling Titles II and XVI:

Assessing Residual Functional Capacity in Initial Claims, and associated regulations. In making her finding, the Magistrate Judge relied on Dowling v. Commissioner of Social Security Administration, 986 F.3d 377, 387 (4th Cir. 2021), wherein the Court of Appeals for the Fourth Circuit held:

> Of course, a claimant's symptoms, and the extent to which the alleged severity of those symptoms is supported by the record, is relevant to the RFC [residual functional capacity] evaluation. See 20 C.F.R. § 416.945(a)(3) (stating that when evaluating an RFC, an ALJ should consider "limitations that result from [the claimant's] symptoms, such as pain"). But an RFC assessment is a separate and distinct inquiry from a symptom evaluation, and the ALJ erred by treating them as one and the same.

As the Magistrate Judge properly noted, in this case, as in Dowling, the ALJ's citation to an the incorrect regulation resulted in the ALJ's failing to follow the proper order of a residual functional capacity analysis and failing to take into account the extent to which Plaintiff's alleged physical impairments impacted her ability to work.[3] The Commissioner's objection is without merit.

The Commissioner next contends substantial evidence supports the ALJ's decision, regardless of whether the ALJ followed the proper order of a residual functional capacity analysis or properly analyzed whether Plaintiff could perform certain work-related physical activities. The Commissioner argues that the ALJ set forth the evidence that supported his residual functional capacity under Paragraph 5, which reads, "After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that she is limited to understanding, remembering, and carrying out simple instructions and no frequent public intervention." R. 24-27. The court disagrees.

---

[3]The Commissioner also submits that the ALJ's reference to the correct regulations and policy statements in the boilerplate language at the beginning of the decision is adequate. As other courts in this district have found, the ALJ's mere reference to these regulations and rulings in the "applicable law" section of the decision is insufficient where the ALJ's analysis fails to conform with the mandates of those regulations and rulings. See Patterson v. Saul, Civil Act No. 9:19-3378-BHH, 2021 WL 912419, *3 (D.S.C. Mar. 10, 2021).

As the Magistrate Judge properly found, the ALJ failed to analyze how Plaintiff's alleged limitations affected her ability to perform job-related functions for a full workday. The Magistrate Judge also found that the ALJ failed to accompany a function-by-function analysis with a narrative describing the evidence. The ALJ simply recited medical evidence without specifically describing how the evidence supported his conclusions, as required by SSR 96-8p.

According to the Commissioner, the Magistrate Judge improperly applied a categorical rule to recommend remand based on her view that the ALJ failed to perform an explicit function-by-function analysis. It is true that analysis of social security disability claims does not lend itself to categorical rules, because the inquiry is case-by-case. Biestek v. Berryhill, 139 S. Ct. 1148 (2019). The Magistrate Judge acknowledged that the Court of Appeals for the Fourth Circuit has not adopted "'a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis.'" ECF No. 15, 20 (citing Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)). As the Magistrate Judge properly found, however, remand is justified in this case, where the ALJ's errors undermine the stated bases for the ALJ's conclusions. The court agrees with the Magistrate Judge that a remand is necessary for a proper evaluation of the record. The Commissioner's objection is without merit.

## V. CONCLUSION

After reviewing the entire record, the applicable law, the briefs of the parties, the findings and recommendations of the Magistrate Judge, and the Commissioners's objections, the court adopts the Magistrate Judge's Report and Recommendation and incorporates it herein by reference. For the reasons set out herein and in the Report and Recommendation, the Commissioner's final decision is **reversed and remanded** pursuant to sentence four of 42 U.S.C. § 405 for further

administrative review.

**IT IS SO ORDERED.**

/s/ Margaret B. Seymour<br>Senior United States District Judge

Charleston, South Carolina

March 29, 2021.